UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**KATHY L. BURNSED,**

    **Plaintiff,**

v.                                                                       Case No.  8:11-cv-1806-T-30AEP

**PASCO REGIONAL MEDICAL
CENTER, LLC,**

    **Defendant.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant Pasco Regional Medical Center, LLC's Motion for Summary Judgment (Dkt. 16) and Plaintiff Kathy L. Burnsed's Response in opposition (Dkt. 20).  The Court, having reviewed the motion, response, record evidence, and being otherwise advised of the premises, concludes that the motion should be denied.

### PERTINENT FACTS[1]

Plaintiff Kathy L. Burnsed filed the instant action against Defendant Pasco Regional Medical Center, LLC ("PRMC") alleging interference with, and retaliation for, Burned's exercise of her Family Medical Leave Act ("FMLA") rights.

PRMC serves the surrounding community as a medical facility.

---

[1] These facts are taken in a light most favorable to Burnsed, the non-movant.

Burnsed has been battling severe ulcerative colitis and chronic asthma most of her life. On or about August 26, 2009, Burnsed applied for a PRN (part-time) position as a respiratory therapist ("RT") at PRMC. Burnsed began her employment with PRMC in September or October of 2009. During her employment with PRMC, Burnsed worked as a RT on an as-needed (PRN) basis. Shortly after she began her employment, however, she was put on a permanent schedule working as the only RT in the hospital during the night shift and maintained that schedule for approximately six months.

The record reflects that Burnsed had a good working relationship with her first supervisor, Doug Collins. Under his supervision, she received an award commending her for exceeding expectations in her position. She also maintained the highest CARET compliance in her department with the exception of one part-time employee. The CARET system tracks the RT's compliance regarding the timeliness and proper administration of medications and treatments.

Collins resigned in the summer of 2010. At that time, Joshua Glenn volunteered to oversee the department in the absence of a director, under the oversight and guidance of the Director of Nursing, Amanda Martin. Glenn was also an RT. According to Glenn, he had serious concerns about Burnsed's performance as an RT. Glenn also took issue with Burnsed's absences. Specifically, on or about September 13, 2010, Burnsed was unable to come to work due to her medical conditions and Glenn prepared a corrective action discipline

record regarding Burnsed's excessive absences. The disciplinary document stated that her absences put "a serious strain on the department" (Dkt. 17-1).

According to Burnsed, when Glenn presented the disciplinary record to her on or about September 15, 2010, Burnsed reminded Glenn of her health conditions and told him that she would need to "check into" FMLA because she believed her absences would be covered under the FMLA. She told him that she would only need to use the leave intermittently and not for large blocks of time. According to Burnsed, Glenn told her that her absences "put a lot of strain on the hospital" and that the hospital "could not have these kinds of absences at a hospital that had such a low staff of people in that department."

On September 20, 2010, Burnsed was presented with a Performance Improvement Plan (PIP) and taken off the schedule. The PIP was prepared by Martin and addressed performance deficiencies. The PIP provided that Burnsed would be given one 12-hour shift per week for her clinical skills to be evaluated by Glenn. According to Martin, the information contained in the PIP came from Glenn because she did not personally observe Burnsed's performance. Burnsed disputes that her performance was deficient in any way.

Also on September 20, 2010, Burnsed submitted a request for intermittent leave under the FMLA. On September 22, 2010, PRMC advised Burnsed that her request for FMLA leave had been approved and that her intermittent leave would commence on October 1, 2010.

According to Burnsed, despite her frequent phone calls to Glenn and Martin, they failed to schedule her for any shifts for several weeks. According to Burnsed, when she

finally was placed on the schedule for one shift, Glenn told her he did not know what to do with her and sent her home. The record reflects that Glenn also told Burnsed that she was not a good fit for PRMC. Martin then made the decision to have RT Steve Rodgers assess Burnsed's performance going forward. The record reflects that Burnsed worked with Rodgers for a short period of time and Rodgers did not think Burnsed's skill level was below expectations.

The reason for Burnsed's termination is unclear in the record. According to Burnsed, Martin and Glenn continued to refuse to put her on the schedule for any shifts despite her repeated attempts to get in touch with them. Eventually she was scheduled to work one shift in late November or early December 2010, but had to use her FMLA because she had recently been hospitalized. Subsequently, Burnsed continued to contact PRMC to receive shifts and was never scheduled to work.

The affidavit of Tabatha Wallace, PRMC's Director of Human Resources, states that Burnsed "inexplicably failed to complete the requirements of the Performance Improvement Plan." (Dkt. 16-1). Wallace's affidavit then states that PRMC "maintained [Burnsed's] active status for several months after her last day of service, with the intention of continuing its efforts to see [Burnsed] succeed." *Id.*

Curiously, although PRMC's motion states that Burnsed was terminated as of June 14, 2011, after six months with neither communication from Burnsed, nor her completing the

PIP's required education and training, these purported "facts" are unsupported in the record relied upon by PRMC.[2]

## SUMMARY JUDGMENT STANDARD OF REVIEW

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that

---

[2] Indeed, the only record evidence PRMC relies upon consists of Burnsed's deposition and Wallace's affidavit. As discussed in more detail herein, Burnsed's deposition provides ample evidence that is contrary to PRMC's position with respect to her termination and Wallace's affidavit does not directly address the reason for her termination.

there is a genuine issue for trial. *Celotex,* 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson,* 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.,* 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248; *Hoffman v. Allied Corp.,* 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## **DISCUSSION**

The FMLA entitles an eligible employee to take twelve workweeks of leave during any twelve-month period because of a serious health condition that makes the employee unable to perform the functions of the position of such employee. 29 U.S.C. § 2612(a)(1)(D). In addition to taking twelve weeks of leave at once, an employee may take intermittent leave in separate blocks of time because of a single qualifying medical reason. 29 C.F.R. § 825.202(a). To preserve these rights to take leave, the FMLA creates two types of claims: interference claims, in which an employee alleges that his employer denied him a benefit guaranteed under the Act, 29 U.S.C. § 2615(a)(1), and retaliation claims, in which

an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act. 29 U.S.C. § 2615(a)(2).

Retaliation and interference claims have different standards of proof. To state an interference claim, a plaintiff must demonstrate that he was entitled to a benefit under the FMLA and the employer denied him the benefit. *Strickland v. Water Works & Sewer Bd. of the City of Birmingham,* 239 F.3d 1199, 1206-07 (11th Cir. 2006). The employer's motives are irrelevant. *Id.* at 1208. In contrast, to succeed on a retaliation claim a plaintiff must show that the employer acted with discriminatory or retaliatory animus when the plaintiff was discharged. *Id.* at 1207.

## I.     Burnsed's Interference Claim

PRMC argues that it is entitled to summary judgment on Burnsed's interference claim because the record is undisputed that Burnsed applied for FMLA intermittent leave and PRMC granted Burnsed FMLA intermittent leave and "never once denied Burnsed her right to take her intermittent FMLA leave." (Dkt. 16).

Curiously, PRMC completely neglects to address the issue of reinstatement. Specifically:

> An employee has the right following FMLA leave "to be restored by the employer to the position of employment held by the employee when the leave commenced" or to an equivalent position. 29 U.S.C. § 2614(a)(1)(A); *see also* 29 C.F.R. § 825.214(a). But this right is not absolute; an employer can deny reinstatement "if it can demonstrate that it would have discharged the employee had he not been on FMLA leave." *Strickland,* 239 F.3d at 1208; *see also* 29 U.S.C. § 2614(a)(3); 29 C.F.R. § 825.216(a); *Parris v. Miami Herald Publ'g Co.,* 216 F.3d 1298, 1301 n. 1 (11th Cir. 2000) (employer that interferes with

> employee's right to reinstatement "bears the burden of proving that the employee would have been laid off during the FMLA period for reasons unrelated to the [FMLA leave], and therefore is not entitled to restoration").

*Martin v. Brevard Cnty. Public Schools*, 543 F.3d 1261, 1267 (11th Cir. 2008).

Here, the record, accepted in a light most favorable to Burnsed, reflects that Burnsed attempted to get in touch with PRMC to receive shifts and PRMC neglected to place her on the schedule. Also, PRMC's reason for Burnsed's termination, which is unclear in the record, appears to be based on Burnsed's failure to successfully complete the PIP. However, as Burnsed points out in her response, this reason is disingenuous given PRMC's failure to provide Burnsed with enough shifts to allow her to comply with the PIP. In other words, Burnsed presents evidence that PRMC interfered with her right to reinstatement because it precluded her from working shifts, which prevented her from being able to comply with the PIP.

In sum, there are genuine issues of material fact with respect to Burnsed's interference claim. Therefore, summary judgment on this claim is improper.

## II. Burnsed's FMLA Retaliation Claim

PRMC argues that it is entitled to summary judgment on Burnsed's FMLA retaliation claim. PRMC argues that it had a legitimate, non-discriminatory reason for Burnsed's termination and that Burnsed cannot establish any causation between the exercise of her FMLA rights and any adverse actions.

In the absence of direct evidence of discrimination by the employer, the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), is applied in evaluating FMLA retaliation claims. To state a claim of retaliation an employee must first establish a prima facie case of retaliatory discharge. An employee must show that: (1) he engaged in statutorily protected conduct; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected conduct and the adverse employment action. *Strickland,* 239 F.3d at 1207. Once an employee establishes a prima facie case, the burden of production shifts to the employer "to articulate a legitimate reason for the adverse action." *Hurlbert v. St. Mary's Health Care Sys., Inc.,* 439 F.3d 1296, 1297 (11th Cir. 2006).

If the employer does so, the employee must then show that the employer's proffered reason was pretextual by presenting evidence "sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Id.* at 1298 (*quoting Chapman v. AI Transp.,* 229 F.3d 1012, 1024 (11th Cir. 2000)). To show pretext, the employee may rely on evidence that he already produced to establish his prima facie case. *Martin v. Brevard County Pub. Schools,* 543 F.3d 1261, 1268 (11th Cir. 2008).

PRMC's arguments in favor of summary judgment lack merit because PRMC relies on facts that are disputed in the record. It is important to note that close temporal proximity between protected conduct and an adverse employment action is generally "sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection."

*Brungart v. BellSouth Telecom, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). Here, the record reflects that on or about September 15, 2010, Burnsed expressed her intention to apply for, and did apply for FMLA after Glenn counseled her for excessive absences, and five days later, Burnsed was presented with a PIP regarding alleged performance issues that she disputes.

Moreover, even if the Court were to assume that PRMC established legitimate, non-discriminatory reasons for the adverse actions of Burnsed receiving the PIP and her ultimate termination, the record reflects ample evidence of pretext. As stated above, PRMC's reason for Burnsed's termination is contradicted in the record; PRMC claims Burnsed did not complete the PIP, but Burnsed presents record evidence that PRMC would not schedule her for any work. Burnsed's evidence presents pretext, that is, "weaknesses, implausibilities, inconsistencies, incoherencies or contradictions" in PRMC's proffered legitimate reasons. *See Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004), *overruled on other grounds*.

Notably, Burnsed also presents evidence that Glenn viewed her absences as a strain on PRMC and reacted negatively when she told him that she thought she qualified for intermittent leave under the FMLA.

In sum, a jury could find that PRMC issued Burnsed a PIP, removed Burnsed from the schedule, and ultimately terminated her because it did not want to deal with her intermittent FMLA absences. Therefore, summary judgment on this claim is improper.

It is therefore ORDERED AND ADJUDGED that Defendant Pasco Regional Medical Center, LLC's Motion for Summary Judgment (Dkt. 16) is DENIED.

**DONE** and **ORDERED** in Tampa, Florida on August 10, 2012.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2011\11-cv-1806.msj16.frm